UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1- 4:21 CR 463 RWS |
| | ) |
| DAVID LEE NELSON, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.    PARTIES:**

The parties are the defendant DAVID LEE NELSON, represented by defense counsel Adam Fein and N. Scott Rosenblum, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.    GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Production of Child Pornography in Counts I, II and the lesser included offense of Attempted Production of Child Pornography in Counts III and IV of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's production of child pornography between on or about July 21, 2021, and on or about July 23, 2021, of which the Government is aware at this time.

1

In addition, the parties agree that the U. S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend sentencing range of 180-264 months. To the extent the District Court is required to vary upward or downward from the advisory Sentencing Guidelines, the parties respectfully request the District Court do so without further filing by either party.

The defendant agrees to forfeit to the United States all property subject to forfeiture under the applicable statute(s), and the defendant knowingly and voluntarily waives any right, title, and interest in all items (including all data contained therein) seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States, including, but not limited to:

a. Patriot brand microSD card;

b. V7 brand microSD card;

c. two digital cameras;

d. batteries;

e. Goalzero brand battery charger;

f. Blue Battery Charger (Boy Scouts of America);

g. Crankia hard drive;

h. two Seagate hard drives;

i. Cavalry hard drive;

j. Surface laptop computer;

k. Dell laptop Precision computer;

l. Real USB Device;

m. Dell XPS;

n.    WD External hard drive;

o.    Toshiba externa hard drive.

p.    Apple iPad; and

q.    HP tablet computer.

The defendant agrees that said items a through q may be disposed of by law enforcement officials in any manner. The parties disagree concerning whether: (1) a USB device labeled thinkware-dash cam, (2) a 2 TB SSD, (3) a Flash Voyager USB and (4) a Quantum Big Foot hard drive that were seized by law enforcement are subject to forfeiture. The forfeiture of these remaining four items will be addressed by the parties at the time of sentencing.

**3.   ELEMENTS:**

As to Counts I and II, the defendant admits to knowingly violating Title 18, United States Code, Section 2251(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime Production of Child Pornography are: (1) defendant knowingly used a minor to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction was produced using materials that have been transported in interstate or foreign commerce.

As to counts III and IV, the defendant admits to knowingly violating Title 18, United States Code, Section 2251(a), and admits there is a factual basis for the plea and further fully understands that the elements of the lesser included crime of Attempted Production of Child Pornography are: (1) defendant knowingly attempted to use a minor to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction was produced using materials that have been transported in interstate or foreign commerce.

4.    **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In July 2021, Bryan Wakeland, a Scout Leader, was at the S Bar F Scout Ranch in St. Francois County. The S Bar F Scout Ranch is a 5,200-acre Boy Scout facility located in the Eastern District of Missouri. The ranch has wooded areas, Nim's Lake, and several camping grounds. Both boys and girls attend the camps.

On July 23, 2021, at about 5:20 p.m., Bryan Wakeland and his troop were cleaning out restroom stalls. The stalls contained a sink, toilet, shower, and paper towel dispenser. When they went to replace paper towels in the dispenser in one of the restrooms, they discovered a camera duct taped inside. The camera, which was attached to a battery, was hidden inside the dispenser and position to record the interior of the bathroom and shower stall. After discovering the device, they checked other stalls. Another Scout Leader, John Dudenhoeffer, found a second camera, secreted like the first camera. The cameras were found in the second and third stalls. Each camera device included a camera with a microphone, a transmitter, and a battery pack. The cameras and batteries were turned over to Erin Tuley, the Camp Manager. Anthony Fouts, the Ranch director called the St. Francois County Sheriff's Department about finding the cameras.

Frederick Worthy, an adult leader, went back to the area after the cameras were found. He noticed defendant in the area. The defendant was a volunteer scout troop leader. Worthy watched the defendant pull out his cell phone. The defendant walked around the area. The defendant then walked to the restroom stalls. The defendant went into the second stall for about 30 seconds. Worthy saw him exist and then enter the third stall. The defendant exited the third stall after two

4

to three minutes and started walking towards the fifth stall, where Worthy was located. Worthy greeted the defendant and the defendant went back to his camp.

Later that day, Deputy Fischer of the St. Francois County Sheriff's Department, arrived. He contacted Fouts and seized the cameras devices. Deputy Fischer conducted an investigation and met with several witnesses, including defendant. Deputy Fischer asked defendant if he left anything inside the bathrooms. Defendant said he left his phone changer inside one of the bathrooms on July 22, 2021, and did not discover it missing until the evening of July 23, 2021. Defendant said he went into both bathrooms to check for the charger but couldn't locate it. Defendant voluntarily wrote a statement saying that around 10:30 p.m. on July 22, 2021, he took a shower, which took about one to one-and-a-half hours, and he charged his phone and a battery pack with a solar panel. Defendant said he left the bathroom but forgot the battery back. He claimed that when he returned to look for the battery pack he was unable to find it. Defendant did not mention anything about leaving the camera devices in bathroom stalls. The devices were seized by the St. Francois County sheriff deputies and placed into evidence.

On July 26, 2021, Sergeant Greg Adams of the St. Francois County Sheriff's Office, obtained the camera devices from evidence and examined them. One camera was equipped with a short antenna. Each camera contained a microSD card. Sgt. Adams removed the microSD cards. One microSD card was a Patriot brand card that was produced outside the state of Missouri and, therefore, traveled in interstate commerce. The other microSD card was a V7 brand card that was produced in Taiwan and, therefore, traveled in interstate and foreign commerce.

Sgt. Adams reviewed the contents of the microSD cards. He discovered multiple videos that depicted two minor children engaged in sexually explicit conduct. These videos were recorded in the restrooms at the camp around July 23, 2021, and the camera was positioned in such a way

5

as to capture the shower stall and toilet areas. The videos show Victim 1 in a lascivious display of his genitals, and masturbating; Victim 2 in a lascivious display of his genitals, and masturbating; and Victim 3 and 4 using the facilities. The defendant attempted to record Victims 5 and 6 in a lascivious display of their genitals, but only succeeded in recording Victims 5 with her underwear pulled down and Victim 6's breasts.

Sgt. Adams also viewed a video of the defendant positioning one of the cameras and manipulating his mobile phone. Still images were made from the videos. The images of defendant were identified by Fouts and Tuley. When Tuley was interviewed, she said that defendant was a volunteer at the camp. She said defendant arrived at the camp on July 18, 2021 along with other volunteers and the scout campers.

On July 26, 2021, Sgt. Adams arrested defendant. He was transported to the St. Francois County Sheriff's Office. His Samsung Galaxy S5 cell phone was seized incident to arrest. On July 30, 2021, in the presence of defendant's attorney, Sgt. Adams obtained consent from defendant to search his cell phone. On August 2, 2021, the phone was transferred to Special Agent Noah Pittman of the FBI.

On July 29, 2021, SA Pittman applied for and received a valid federal search warrant to search the residence where defendant was residing in July 2021. The search warrant was lawfully executed the same day. During the execution of the search warrant, several items were seized as authorized by the search warrant.

On August 5, 2021, SA Pittman applied for and received a valid federal search warrant to search the items that had been obtained from the St. Francois County Sheriff's Department. The search warrant was lawfully executed.

6

On August 26, 2021, and August 27, 2021, forensic interviews conducted of several of the victims. None of the victims knew that defendant had setup the cameras to record them in the shower at the camp.

**Summary**

As to Count I, and as the defendant now admits, between on or about July 21, 2021, and on or about July 23, 2021, the defendant knowingly video recorded 15-year-old Victim 1 in a lascivious display of his genitals and while masturbating, for the purpose of producing a visual depiction of him in a lascivious display of his genitals and masturbating, and the visual depiction was produced using a digital camera and microSD card that had been transported in interstate and foreign commerce.

As to Count II, and as the defendant now admits, between on or about July 21, 2021, and on or about July 23, 2021, the defendant knowingly video recorded 11-year-old Victim 2 in a lascivious display of his genitals and while masturbating, for the purpose of producing a visual depiction of him in a lascivious display of his genitals and masturbating, and the visual depiction was produced using a digital camera and microSD card that had been transported in interstate and foreign commerce.

As to Count III, and as the defendant now admits, between on or about July 21, 2021, and on or about July 23, 2021, the defendant knowingly attempted to video record 13-year-old Victim 3 and 13-year old Victim 4 to capture a lascivious display of their genitals, for the purpose of attempting to produce a visual depiction of Victim 3 and Victim 4 in a lascivious display of their genitals, and the visual depiction was produced using a digital camera and microSD card that had been transported in interstate and foreign commerce.

As to Count IV, and as the defendant now admits, between on or about July 21, 2021, and on or about July 23, 2021, the defendant knowingly attempted to video record 12-year-old Victim 5 and 13-year old Victim 6 in a lascivious display of their genitals, for the purpose of attempting to produce a visual depiction of Victim 5 and Victim 6, by focusing a camera to record their genital areas in a restroom, and the visual depiction was produced using a digital camera and microSD card that had been transported in interstate and foreign commerce.

5.    **STATUTORY PENALTIES:**

As to Counts I and II, the defendant fully understands that the maximum possible penalty provided by law for the crime of Production of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than thirty years for each count, a fine of not more than $250,000 for each count, or both such imprisonment and fine. The Court must also impose a period of supervised release of life and not less than five years. **The defendant fully understands that the charge of Production and Attempted Production of Child Pornography to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least fifteen years.**

As to Counts III and IV, the defendant fully understands that the maximum possible penalty provided by law for the crime of Attempted Production of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than thirty years for each count, a fine of not more than $250,000 for each count, or both such imprisonment and fine. The Court must also impose a period of supervised release of life and not less than five years. **The defendant fully understands that the charge of Production of Child Pornography to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least fifteen years.**

The defendant understands that the Court impose concurrent sentences (sentences that run at the same time) or consecutive sentences (sentences that run one after the other).

Additionally, per 18 U.S.C. § 2259A, defendant fully understands that for offenses committed on or after December 7, 2018, in addition to other assessments, the Court may impose an assessment for each count of no more than $50,000.00 if convicted of child pornography production as defined by 18 U.S.C. § 2259(c)(1), which includes offenses under 18 U.S.C. § 2251(a) through (c) (production of child pornography).

**Possibility of Enhanced Criminal Status:** In certain situations, defendant may be subject to a mandatory minimum sentence and a maximum sentence greater than described above. Below are some of the provisions that have increased sentences for certain prior convictions:

| | |
|---|---|
| Production of Child Pornography 18 U.S.C. § 2251(e) | a. One prior conviction: 25 years to 50 years b. Two or more prior convictions: 35 years to life. |
| For offenses under 1591 (relating to sex trafficking of children), 2241 (relating to aggravated sexual abuse), 2242 (relating to sexual abuse), 2244(a)(1) (relating to abusive sexual contact), 2245 (relating to sexual abuse resulting in death), 2251 (relating to sexual exploitation of children), 2251A (relating to selling or buying children), 2422(b) (relating to coercion or enticement of a minor into prostitution) (unless 3559(e)(3) applies) or 2423(a) relating to transportation of minors) (unless 3559(e)(3) applies). 18 U.S.C. § 3559(e) | If convicted of one of these offenses in which a minor is the victim and the person has a prior sex conviction in which a minor is a victim, the term of imprisonment is life, unless a sentence of death is imposed. |

The defendant is pleading guilty with full knowledge of these, as well as other possibilities, has discussed the possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines that the defendant is subject to different minimum or maximum sentences than described herein.

**6.**    **U. S. SENTENCING GUIDELINES: 2021 MANUAL:**

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    **(1)**    **Production of Child Pornography for Count I:**

        **(a)**    **Base Offense Level**: The parties recommend that the base offense level is thirty-two (32) as found in Section 2G2.1(a).

        **(b)**    **Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics apply:

            (i)    two (2) levels should be added pursuant to Section 2G2.1(b)(1)(B), because the offense involved a minor who had "attained the age of twelve years but not attained the age of sixteen years;"

            (ii)    the Government believes two (2) levels should be added pursuant to Section 2G2.1(b)(5), because "the minor was otherwise in the custody, care, or supervisory control of the defendant." The defendant does not agree that these two levels should be added.

    **(2)**    **Production of Child Pornography for Count II:**

        **(a)**    **Base Offense Level**: The parties recommend that the base offense level is thirty-two (32) as found in Section 2G2.1(a).

**(b)**    **Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics apply:

(i)    four (4) levels should be added pursuant to Section 2G2.1(b)(1)(B), because the offense involved a minor who had "not attained the age of twelve years;"

(ii)    the Government believes two (2) levels should be added pursuant to Section 2G2.1(b)(5), because "the minor was otherwise in the custody, care, or supervisory control of the defendant." The defendant does not agree that these two levels should be added.

**(3)    Attempted Production of Child Pornography for Count III:**

**(a)**    **Base Offense Level**: The parties recommend that the base offense level is thirty-two (32) as found in Section 2G2.1(a).

**(b)**    **Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics apply:

(i)    two (2) levels should be added pursuant to Section 2G2.1(b)(1)(B), because the offense involved a minor who had "attained the age of twelve years but not attained the age of sixteen years;"

(ii)    the Government believes two (2) levels should be added pursuant to Section 2G2.1(b)(5), because "the minor was

11

otherwise in the custody, care, or supervisory control of the defendant." The defendant does not agree that these two levels should be added.

**(4)** **Attempted Production of Child Pornography for Count IV:**

    **(a)** **Base Offense Level**: The parties recommend that the base offense level is thirty-two (32) as found in Section 2G2.1(a).

    **(b)** **Chapter 2 Specific Offense Characteristics**: The parties recommend that the following Specific Offense Characteristics apply:

        (i) two (2) levels should be added pursuant to Section 2G2.1(b)(1)(B), because the offense involved a minor who had "attained the age of twelve years but not attained the age of sixteen years;"

        (ii) the Government believes two (2) levels should be added pursuant to Section 2G2.1(b)(5), because "the minor was otherwise in the custody, care, or supervisory control of the defendant." The defendant does not agree that these two levels should be added.

**(5)** **Chapter 3 Adjustments**: The parties recommend that the following adjustments, other than acceptance of responsibility, apply:

    (1) The offense level is either thirty-six (36) or thirty-four (34) for Count I.

    (2) The offense level is either thirty-eight (38) or thirty-six (36) for Count II.

    (3) The offense level is either thirty-six (36) or thirty-four (34) for Count III.

(4)     The offense level is either thirty-six (36) or thirty-four (34) for Count IV.

(5)     Pursuant to Section 3D1.2(d), the counts do not Group.

(6)     Pursuant to Section 2G2.1(d)(1), "if the offense involved the exploitation of more than one minor, Chapter Three, Pard D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." Both Counts III and IV involve two minors.

(7)     Calculation of Units

    (a)     As to Count II, pursuant to Section 3D1.4(a) (Determining the Combined Offense level), one (1) unit should be added because the offense level in Count II constitutes the highest offense level.

    (b)     As to Count I, pursuant to Section 3D1.4(a) (Determining the Combined Offense level), one (1) unit should be added because the offense level is equally as serious as the offense in Count II, or from 1 to 4 levels less serious.

    (c)     As to Count III, pursuant to Section 3D1.4(a) (Determining the Combined Offense level), one (1) unit should be added because the offense level is equally as serious as the offense in Count II, or from 1 to 4 levels less serious. An additional one (1) unit should be added pursuant to Section 2G2.1(d)(1), because the offense involves two minors. The total number of units that should be added as to Count III is two (2) units.

    (d)     As to Count IV, pursuant to Section 3D1.4(a) (Determining the Combined Offense level), one (1) unit should be added because the

offense level is equally as serious as the offense in Count II, or from 1 to 4 levels less serious. An addition one (1) unit should be added pursuant to Section 2G2.1(d)(1), because the offense involves two minors. The total number of units that should be added as to Count IV is two (2) units.

     (f)     The total number of units for Counts 1-IV are six (6) units

     (6)     Pursuant to Section 3D1.4 (Determining the Combined Offense Level), five (5) levels should be added because the total number of units is 6. This places the offense level, after application of Section 3D1.4, at either forty-one (41) or forty-three (43).

**c.**     **Repeat and Dangerous Sex Offender Against Minors:** The parties recommend that five (5) levels should be added pursuant to Section 4B1.5(b)(a) because "defendant's instant offense of conviction is a covered crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct. . . ."

First, defendant's instant offense of conviction (Production of Child Pornography) is a covered crime because it was perpetrated against a minor under Chapter 110 of title 18, United States Code.

Second, defendant engaged in a "pattern of sexual activity involving prohibited sexual conduct" because "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."

Therefore, the offense level, after the application of Section 4B1.5(b)(1), is either forty-six (46) or forty-eight (48).

14

d.      **Other Chapter 3 Adjustments**:

(1)     **Acceptance of Responsibility**: The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant that it believes are inconsistent with defendant's eligibility for this deduction, the government may assert that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1.

e.      **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is either forty-three (43) or forty-five (45). However, "an offense level of more than 43 is to be treated as an offense level of 43." USSG Ch.5, Pt.A, comment. (n.1).

f.      **Criminal History:**    The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

7.      **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

a.      **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1)     **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2)    **Sentencing Issues** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of a range of 180-264 imprisonment. Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

b.    **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c.    **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.    OTHER:**

a.    **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office

16

prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

     **b.**     **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

     **c.**     **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. Some of these special conditions may include that defendant not possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box. In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws.

     These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

     **d.**     **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $400, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before September 30, 2021, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under Chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. §2251(a) (production of child pornography)).

The assessment imposed under 18 U.S.C. § 3014 is in addition to the mandatory special assessment imposed under 18 U.S.C. § 3013.

e.     **Possibility of Detention:** The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f.     **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty.

18

**g.     Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the items listed on page 2 and 3, as previously identified in this agreement. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9.     ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond

a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following

20

conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10.  **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.    CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.    NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

1-25-24
_____
Date

_____
MATTHEW T. DRAKE – 46499MO
Assistant United States Attorney

1/25/24
_____
Date

_____
DAVID LEE NELSON
Defendant

1/25/24
_____
Date

_____
ADAM FEIN
Attorney for Defendant

22