UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No.: 4:21-cr-463-RWS-1 | |
| | ) | |
| DAVID LEE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

Defendant David Nelson, by and through counsel, files the following memorandum in support of a sentence of 15 years imprisonment and lifetime supervised release.

David has been confined in a local jail with little to do other than reflect for four months shy of three years. But almost three years of reflection haven't helped him understand the connection between his offense and its apparent mainspring:  his molestation decades ago in a Boy Scout summer camp shower room. David can't fathom why his molestation years earlier would have moved him to act as he did. Nothing obvious stands out. And, by his own account, he's had an otherwise idyllic life. He built a successful business following college, sold it at a profit, and took a well-paying job with the buyer. He has many close friends, family members who love him dearly, and hobbies he enjoys. Whatever the explanation, David hopes to get mental health treatment while in prison to grasp what he still can't fully comprehend, better understand himself, and discover the motives and connections underlying his behavior. He'll have plenty of time to devote to this endeavor too.

1

In the vernacular of the Guidelines, he has a total offense level of 43,[1] and a criminal history category is I.[2] These variables produce a recommended sentence of 1,440 months or 120 years in prison,[3] despite David's plea of guilty and the absence of criminality in his past.

Comparatively, it's difficult to reconcile these numbers with the Guidelines generally. Had David committed a premeditated murder, his total offense level would have dropped to 40,[4] and his Guidelines range would have fallen to 292-365 months.[5] His offense level would have been reduced to 35 if he had killed someone in what the law classifies as second-degree murder.[6] In that case, his Guidelines range would have lowered to 168-210 months.[7] Similarly, if he conspired to execute someone and paid a confederate $100,000 to carry the deed out, his offense level would have decreased to 34,[8] and his range of punishment would have shrunk further still to 151-188 months.[9]

In general, the law gauges murder as the most serious offense, and outcomes like these may explain why courts do not follow the Guidelines in most like cases. In 2019, 57.2 percent of child pornography production offenses resulted in long but well-below-Guidelines sentences.[10]

---

[1] *See* Presentence Investigation Report (PSR) at ¶ 83.

[2] *See id*. at ¶ 88.

[3] *See id*. at ¶ 113.

[4] S*ee* U.S.S.G. §2A1.1.

[5] *See* United States Sentencing Guidelines Manual, Sentencing Table.

[6] *See id*. at §2A1.2.

[7] *See id*., Sentencing Table.

[8] S*ee id*. at 2A1.5.

[9] *See* id., Sentencing Table.

[10] *See* United States Sentencing Commission, Federal Sentencing of Child Pornography Production Offenses at 3 (Oct. 2021) [hereinafter Production Offenses Report]; in 2022, 59 percent of production offenses resulted in below

The average sentence on the factually diverse continuum for production offenses came to 275 months.[11] In David's case, an outcome at the low-end of the parties' recommended range (180 months) would come out just below the mid-range of what the Guidelines would have advised had he committed a second-degree murder:  188 months.[12]

These comparisons aside, there are other sound reasons for a 180-month sentence. According to the United States Sentencing Commission, several facts distinguish more from less culpable child pornography production offenses and tend to produce more severe sentencing outcomes.[13] In David's case, most of the facts are absent.

For example, in 2019, 40 percent of production offenders incapacitated, coerced, or enticed a victim, "or misrepresented their identity…to facilitate the offense."[14] Most often, offenders who incapacitated victims did so with drugs or alcohol.[15] Offenders who coerced victims typically did so through sextortion,[16] followed by threats of violence, violence, and

---

guideline sentences for reasons other than a 5K1.1 motion, the same percentage as in 2021 and 2000. *See* Sourcebook of Federal Sentencing Statistics, Table 32, (2022), (2021), and (2020). In 2019, 22 percent of child pornography production defendants pled guilty to a lesser charge and, unlike David, did not face a 15-year mandatory minimum penalty or the child pornography production guideline. *See* Production Offenders Report at 3.

[11] *See id.*

[12] *See* U.S.S.G. § 2A1.2; *see also* Sentencing Table.

[13] *See* Production Offenses Report at 26-42.

[14] *See* Production Offenses Report at 37. "Child pornography production offenders who incapacitated or coerced victims received longer average sentences, compared to offenders who used other means of enticement or did not engage in those behaviors." *Id.* at 48. Offenders who did not incapacitate, coerce, or entice victims and who did not misrepresent themselves to victims received the shortest sentences among this group with an average sentence of 266 months. *See id.*

[15] *See id.* at 37.

[16] *See id.* at 38. Sextortion "involves coercing a minor by using, or threatening to use, images or videos previously obtained to demand that the minor engage in a sexual act with the offender or to demand additional images or videos that are sexual in nature. Sextortion can take many forms, including making threats to harm family or friends unless the victim complies with demands, hacking to gain access or control of the computer's webcam to obtain images and videos, or leading the victim to believe the perpetrator can be trusted." *Id.*

bullying.[17] David did not incapacitate or coerce a victim.[18] Nor did he entice a victim or misrepresent his identity to facilitate the offense.[19]

David did not have sexual contact with a victim either.[20] Yet, in 2019, the vast majority of offenders (80.9%) did.[21] What's more, sometimes this contact takes the form of more than just a touch. Some offenders have sexual intercourse with their victims on multiple occasions over one or more years or have them perform sex acts on adults, other children, or themselves.

Likewise, in 2019, "[m]ost child pornography production offenders not only produced child pornography, but also engaged in additional child pornography conduct or sexual exploitation. Two-thirds (68.4%) of production offenders in fiscal year 2019 either distributed the pornography they produced, possessed or distributed pornography they did not produce, or otherwise participated in an online community devoted to child pornography or sexual exploitation."[22] David did not distribute the video he produced[23] or any other child pornography. Indeed, he never saw the video he produced and didn't possess any other videos or images to distribute.[24] Nor did he participate in an online community devoted to child pornography,

---

[17] *See id*.

[18] *See* PSR at ¶¶ 19-24.

[19] *See id*.

[20] Offenders like David who did not have sexual contact with their victims received the shortest average sentence among all child pornography production offenders: 221 months. *See* Production Offenses Report at 47. In contrast, offenders who had sexual contact with their victims received an average sentence of 307 months, and offenders who directed their victims to engage in sexual contact received an average sentence of 244 months. *See id*.

[21] *See* Production Offenses Report at 35.

[22] *Id*. at 40-41.

[23] Consequently, unlike victims in many cases, David's victims will not have to live with the knowledge that their images will circulate in perpetuity on the internet.

[24] *See* PSR at ¶¶ 19-24.

communicate with anyone on the internet about child pornography, or so much as visit a website or social media platform with child pornography.[25]

In addition, "[i]n nearly 40 percent (37.5%) of child pornography production cases sentenced in fiscal year 2019, the offender engaged in a contact sex offense against a minor"— separate and apart from the offenders production offense.[26] "More than one-in-ten (10.9%) had a prior conviction for a contact sex offense against a child. Similar proportions of fiscal year 2019 child pornography production offenders were arrested for (11.5%), admitted to (10.0.%), or were alleged (11.7 %) to have committed a contact sex offense against a minor."[27] David has no prior contact sex offense convictions or arrests, and no one has ever alleged he committed a contact sex offense with a minor or adult.

Conversely, many facts that increase David's sentence do not distinguish his case from the ordinary. Like David, 83.5 percent of those who committed a production offense had a victim 12 years of age or younger,[28] and 60.3 percent were either related to or held a position of trust in connection with a victim.[29] What's more, almost half of all offenses (41 percent) involved more than one victim.[30] David's offense involved six victims spread across four counts. But some offenses involve far more and as many as 440.[31]

---

[25] *See id.*

[26] Production Offenses Report at 41.

[27] *Id*. at 41.

[28] *See id*. at 5; between 2020 and 2022, 85.8, 83.1, and 87.5 percent of offenders, respectively, received an age-based increase of between two and our levels. *See* Use of Guidelines Specific Offense Characteristics, Guideline Calculation Based, (2020), (2021) and (2022) at 41, 97 and 97.

[29] *See id*. at 4, 30.

[30] *See id*. at 4, 27.

[31] *See id*. at 27.

Notably, offenders in this district with similar but more aggravated offense facts have received sentences from 204 to 217 months. Dennis Naumann installed hidden cameras in at least three locations in his home: two bathrooms and a hallway used by his stepdaughter.[32] Over several years, he captured at least 55 images and two videos of his stepdaughter in the nude, in various stages of undress, and showering.[33] He also captured 12 images and three videos of two of his stepdaughter's friends.[34] Naumann discussed the images and videos on social media and emailed some to at least two people.[35] He also possessed 62 files of additional child pornography in a cloud-based account, exchanged some of them with others, and conducted over 156 Google searches with child pornography-related terms like tween pokies, 13 pokies, sexy tween images, and sexy tween jailbait.[36] Naumann received a sentence of 204 months.[37]

James Kukan hid recording devices in his daughters' bedrooms and a shared family bathroom.[38] The devices captured his daughters, aged 16, 12, and 9, in the shower, undressing, and using the toilet.[39] They captured his wife as well.[40] Kukan possessed no other child pornographic material, and he visited no child pornography-related sites.[41] But he discussed the

---

[32] *See United States v. Dennis Naumann*, 4:21-cr-708-MTS-1, Plea Agreement at 3-7 [Doc. Text #42] (EDMO 2021).

[33] *See id*.

[34] *See id*.

[35] *See id*.

[36] *See id*.

[37] *See id*., Criminal Docket for Case #4:21-cr-00708-MTS-1.

[38] *See United States v. James Kukan*, 4:22-cr-102-AGF-1, Plea Agreement at 2-4 [Doc. Text #66] (EDMO 2022).

[39] *See id*.

[40] *See id*.

[41] *See id*.

images and videos on social media, shared some with l others, and tried to sell them on

Telegram, Kik, and other platforms.[42] An undercover FBI agent who posed as a buyer proved

Kukan's undoing. Kukan received a sentence of 217 months.[43]

Noah Church sent six child pornographic images of his five-year-old cousin to a user on

Kik—another undercover FBI agent.[44] Among other things, Church claimed to have molested his

cousin over two years.[45] Following his arrest, a search of Church's cell phone turned up

"thousands of [additional] images of child pornography."[46] Church received a sentence of 210

months for his offense.[47]

At 31, Gerardo Montes attempted to sextort a 14-year-old female. He sent her

pornography, received topless selfies in return, and propositioned her for sex.[48] She then asked

him to cease all contact.[49] He took offense, told her to "change her attitude real quick," and

threatened to post her pictures on social media and school websites throughout Missouri if she

didn't comply with his demands.[50] She replied, "Do you literally not care that I'm fucking

broken."[51] Unmoved, he suggested she have sex with a dog and demanded pornographic images

---

[42] *See id.*

[43] *See id.*, Criminal Docket for Case #4:22-cr-102-AGF-1.
.
[44] *See United States v. Noah Church*, 1:23-cr-33-SNLJ, Plea Agreement 2-3 [Doc. Text #27] (EDMO 2023).

[45] *See id.*

[46] *Id.*

[47] *See id.*, Criminal Case Docket for Case #1:23-cr-33-SNLJ-1.

[48] *See United States v. Gerardo Javier Montes*, 4:22-cr-416-SRC-1, Plea Agreement at 2-7 [Doc. Text #47] (ED MO 2022).

[49] *See id.*

[50] *Id.*

[51] *Id.*

that he described in detail and listed by number.[52] An investigation after his arrest two months later uncovered more: sexual communications with a 12-year-old female from the year before; records of gifts, money, and sex toys sent to minor females in three states; a pornographic video sent to Montes by one out-of-state female at Montes' request; electronic records of purchases of child pornography; sexually explicit images of Montes' past minor girlfriends traded by Montes on social media for child pornography; and child pornography stored on his cloud-based account.[53] Montes' plea agreement estimates a Guidelines offense level of 40 but contemplates a guilty plea to one count of distribution of child pornography with a statutory maximum sentence of 240 months.[54] A court in the district will sentence him this summer.[55]

David will serve a very long sentence, whatever outcome this Court settles on. Like most sex offenders, he's ineligible for prison programs that might reduce his sentence. He'll receive credit for time served, good time credit, and a small amount of halfway house time but nothing more. At the moment, David is 41. At the time of his release, he'll be between 51 and 55[56] with his best earning years behind him and a federal sex offense conviction that will sharply limit his prospects. He'll have to register for life as a sex offender and contend with a lifetime of stringent conditions of supervised release with little family to lean on. His mother, Janet, is 75 and her health is in decline. In all likelihood, she won't outlive his sentence. David has one brother, Scott, with whom he's close. But Scott is in no position to support his brother. He's married with

---

[52] *See id*.

[53] *See id*.

[54] *See id*. at 2, 7, and 9

[55] *See id*., Criminal Case Docket for Case #4:22-cr-416-SRC-1.

[56] This range assumes a sentence consistent with the parties' recommended outcome, maximum good time credit, and a six-month stay in a halfway house.

two children, aged six and three, and both will be near or have reached college age by the time David reenters society. In short, David will have a painful future to navigate with obstacles everywhere to overcome for the duration of his life, which seems like punishment enough when added to a 15-year prison sentence for someone who has never served a prior sentence before.

For the foregoing reasons, David Nelson respectfully requests this Court impose a sentence of 15 years imprisonment with lifetime supervised release.

Respectfully submitted,

By:   /s/ ADAM FEIN

Adam Fein, MO #52255
Attorney for Defendant
120 S. Central Avenue, #130
Clayton, MO 63105
(314) 862-4332
afein@rsfjlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Matthew Drake, Assistant United States Attorney.

10